Robert Lee TWYMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–376.

Court of Criminal Appeals of Oklahoma.

April 5, 1974.

Rehearing Denied April 23, 1974.

Hubert Hargrave, Wewoka, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., William Thiebaut, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Robert Lee Twyman, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Seminole County, Case No. CR–72–21, for the crime of Murder. His punishment was fixed at life imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Jim Daniel testified that on February 29, 1972, he was employed as an Oklahoma Highway Patrol Trooper. While on patrol he observed a body lying on the side of Interstate 40, approximately one mile east of State Highway 99, in Seminole County, Oklahoma. He notified the Seminole County authorities.

Dr. Jack W. Parrish testified that he was a licensed physician in Oklahoma, and he was the Seminole County Medical Examiner on February 29, 1972. He examined the body at the scene. In his opinion, the deceased died as a result of a gunshot wound located in the deceased's anterior left chest wall. Dr. Parrish further testified that as the deceased's body was turned over, a spent slug rolled out of his clothing. This slug was given to the Sheriff of Seminole County.

Dr. Ted Violet testified that he was employed as a licensed physician in the State of Oklahoma, and he performed an autopsy on the body of the deceased. He identified the body as Leon Pase. In his opinion, the cause of death was due to a gunshot wound.

He further testified that the gunshot wound was consistent with damage caused by a .22 caliber bullet.

Charles Pase testified that he was the nephew of the deceased, Leon Pase; that he lived in West Virginia and during the middle part of February, 1972, he had an occasion to see the deceased and the defendant in West Virginia, where the deceased's car broke down. During this time, the defendant displayed a .22 caliber revolver on at least two occasions. On one of these occasions the defendant was firing the revolver into an "ash pile" at the home of Charles' father. At the request of the Sheriff of Seminole County, Oklahoma, he retrieved three expended .22 caliber bullets from the "ash pile." He wrapped them and placed them in a box and gave the box to his Uncle George Pase. Pase further testified that the deceased purchased a 1965 Ford Fairlane station wagon while in West Virginia.

George Pase testified that he was living in Delaware during the latter part of February, 1972. During this time the defendant and deceased visited him at his home in Delaware. Defendant, on numerous occasions, polished a .22 caliber revolver and shot it while staying at his home. George Pase further testified that he received three bullets from Charles Pase. These bullets were sent to the Sheriff of Seminole County.

W. C. Merryfield, Sheriff of Seminole County, testified that on February 29, 1972 he went to the scene where the deceased's body was located. His testimony, in regard to the condition of the body at the scene, was substantially the same as that of Dr. Parrish. Sheriff Merryfield further testified that he received three bullets from George Pase through the U.S. Mail.

Bill Holt testified that during the month of February, 1972, he was employed as an Oklahoma Bureau of Investigation agent, and that he received various .22 caliber bullets from Sheriff Merryfield. He (Holt) turned these bullets over to Ray Lambert, Firearms Examiner for the Oklahoma Bureau of Investigation.

Ray Lambert testified that he was employed by the Oklahoma Bureau of Investigation as a Firearms Examiner during the month of March, 1972. He received various .22 caliber bullets from Bill Holt which he examined and in his opinion all were fired from the same .22 caliber weapon.

John Dunn testified that he was operating a service station and wrecker service in Eloy, Arizona (which is between Tucson and Phoenix), during the month of March, 1972. At some time around the 1st day of March, 1972, he towed a 1965 Ford Fairlane station wagon with West Virginia license plates, to his station. Dunn then identified the defendant as the person who requested him to tow the car.

Harold Thompson testified that he was engaged in the business of managing a trailer park in Tucson, Arizona; that during the month of March, 1972, the defendant stayed at his trailer park from early March, 1972, until late May, 1972. Thompson further testified that the defendant had told him that his car had broken down between Tucson and Phoenix.

Sheriff Merryfield was recalled to the stand and testified that during October, 1972, he and Bill Holt went to the Tucson-Phoenix area and processed the 1965 Ford station wagon located at Dunn's service station. Merryfield then testified that a letter from Leon Pase to George Pase was found in the car's glove compartment.

George Pase was recalled to the witness stand and identified the letter found in the station wagon as a letter he had written to the deceased, Leon Pase. He then identified certain clothing found by Sheriff Merryfield in the Ford station wagon as clothing he gave to the deceased.

Weldon L. Kennedy testified that he was a special agent for the Federal Bureau of Investigation and that during the month of June, 1972, he was assigned to the Las Vegas, Nevada office. He further testified that defendant surrendered himself at the

Las Vegas office. Kenneth informed the defendant of his constitutional rights. The defendant indicated that he understood his rights and would answer questions. Defendant stated that he and deceased were traveling through Arkansas, enroute to Tucson, Arizona, when they picked up two "hippies." The deceased and the two "hippies" left him in Arkansas and he hitchhiked to Las Vegas.

The defendant took the stand in his own behalf and testified that the deceased owned the .22 caliber gun referred to above; that he only fired the gun a few times. He further testified that the last time he saw the gun it was in the glove compartment of the deceased's car. The defendant then reaffirmed his statement that he was left in Arkansas by the deceased and the two "hippies." He then stated that he hitchhiked from Arkansas through Texas, New Mexico, and Arizona, until he arrived in Las Vegas, Nevada.

■ The defendant's first proposition of error asserts that the trial court erred in admitting hearsay evidence. The transcript reveals that George Pase, one of the State's witnesses, testified over defendant's objection, to a statement made by the deceased, out of the defendant's presence, to a third party, that "He (deceased) had a couple of hundred dollars, or a little better" in his possession prior to leaving George Pase's residence with the defendant.

In the case of Starks v. State, 67 Okl.Cr. 156, 93 P.2d 50 (1939), this Court held in the sixth paragraph of the Syllabus:

"Explanatory circumstances and declarations connected with the commission of a homicide, which have a tendency to shed light on the motives of the parties, are admissible in evidence, including antecedent declarations made by the deceased and the defendant, where they form some link in the chain of circumstances, explanatory of their motives or other vital issues involved."

In the instant case, the State presented evidence that the deceased had less than $1.00 on his person at the scene of his death. It is, therefore, our opinion that the complained of hearsay evidence was properly admitted as an exception to the hearsay rule in that this evidence shed light on the possible motive surrounding the homicide.

■ The defendant's second proposition asserts that the State's evidence, which was mostly circumstantial, was not sufficient to sustain a conviction for Murder. The defendant cites no authority in support of this proposition. In the case of Stublingbear v. State, Okl.Cr., 364 P.2d 1115 (1961), this Court held, in the second paragraph of the Syllabus:

"Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence."

It is our opinion, after a complete review of the transcript of evidence in this case, that the State's evidence, although mostly circumstantial, was sufficient to support the jury's verdict.

■ Defendant's third proposition asserts error in the trial court's giving Instructions Nos. 7, 8, 10 and 15. We have carefully reviewed Instructions Nos. 7, 8 and 15 in conjunction with the other Instructions given by the trial court, and in our opinion, the trial court's Instructions fairly and accurately state the law applicable to the case at bar, and are sustained by the evidence. Instruction No. 10, as given by the trial court, instructs the jury, in essence, that in determining the guilt or innocence of the defendant, they may not consider any statement made by him to the authorities unless he was given the "Miranda Warnings" and knowingly and intelligently waived the same prior to making any statement or answering any questions. Although the giving of Instruction No. 10 is not the model procedure to follow in this jurisdiction, it is our opinion that this Instruction was more beneficial

than harmful to the defendant, and in any event, was mere surplusage and harmless.

The defendant's final proposition asserts that the trial court erred in improperly commenting on the evidence. The defendant's argument under this proposition is that the trial judge improperly reprimanded defendant's attorney, in the presence of the jury, and improperly commented on certain photographs of the deceased, in the presence of the jury.

The record reveals that both incidents were outside the hearing of the jury. It is, therefore, our opinion that this proposition is wholly without merit.

For the foregoing reasons, we believe that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J., and BRETT, J., concur.